UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FUGRO-MCCLELLAND MARINE GEOSCIENCES, INC., <br> *Plaintiff*, <br> <br> vs. <br> <br> STEADFAST INSURANCE CO. AND LEXINGTON INSURANCE CO., <br> *Defendants*. | § § § § § § § § § § | CIVIL ACTION H-07-1731 |

# ORDER

This insurance dispute is before the court on defendant Steadfast Insurance Company's motion to compel production of documents listed on plaintiff Fugro-McClelland Marine Geosciences, Inc.'s (FMMG's) privilege log. (Dkt. 81) (as supplemented by Dkt. 88). Steadfast's motion is denied.

## Background

FMMG was sued in federal court in the Eastern District of Louisiana by J. Ray McDermot Engineering, L.L.C. and others for breach of contract and negligent performance of services (the *McDermot* lawsuit). Steadfast Insurance Company issued a Commercial General Liability Policy to FMMG. Lexington Insurance Company issued a Professional Liability Policy to FMMG. FMMG asserted coverage for indemnity and defense of the *McDermot* lawsuit under both policies. FMMG settled the McDermot lawsuit for $3.7 million. FMMG funded the settlement out of its own pocket. FMMG filed this federal lawsuit on May 23, 2007 to collect the settlement amount and defense costs from its insurers.

FMMG also sues to enforce an alleged agreement with Steadfast to settle this federal lawsuit. In defense Steadfast asserts, among other things, that FMMG breached its duty to cooperate with Steadfast in the defense of the *McDermot* lawsuit.

**Analysis**

Steadfast seeks production of four categories of documents: (1) communications between FMMG and its *McDermot* defense counsel; (2) communications between FMMG and Lexington regarding the *McDermot* case; (3) communications among FMMG representatives about the *McDermot* case; and (4) documents related to damages in the *McDermot* case.

FMMG represents that it has produced all documents in categories 2 and 4.[1] Steadfast's motion to compel such documents is denied as moot.[2]

As to categories 1 and 3, the documents in question would ordinarily be protected by the attorney-client and work product privileges. Steadfast contends that the documents are not privileged as to Steadfast because (1) Steadfast and FMMG shared a common interest in the *McDermot* case; (2) FMMG is obligated to share privileged documents with Steadfast pursuant to the cooperation provision of the insurance policy; and (3) FMMG waived any privilege through offensive use.

---

[1]  FMMG's response, Dkt. 90, at 2 and footnote 1.

[2]  If Steadfast has reason to believe that FMMG is withholding a specific document in one of these categories despite its representation to the contrary, Steadfast should promptly bring the matter to the court's attention.

***Common interest***.   FMMG views this dispute through the lens of Texas Rule of Civil Procedure 503, which recognizes a "joint defense" privilege to protect "confidential communications made for the purpose of facilitating the rendition of legal services . . . to a lawyer or representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein." TEX. R. EVID. 503(b)(1)(C).[3]  However, when a lawyer represents two clients in a matter of common interest, the privilege cannot be claimed by one against the other in subsequent litigation between the two clients. TEX. R. EVID. 503(d)(5).  FMMG argues that Rule 503(d)(5) does not apply here because trial counsel in *McDermot* represented only FMMG, not Steadfast.

Steadfast does not cite any Texas state or federal court decisions in support of its common interest theory, nor does it rely upon Texas Rule 503.[4]  Steadfast does cite federal district court cases from other jurisdictions.[5]  For instance, Steadfast cites *Independent Petrochemical Corp. v. Aetna Cas. & Sur. Co.*, 654 F. Supp. 1334, 1365 (D.D.C. 1986).  In

---

[3] Both parties assume for purposes of this dispute that Texas law applies. Steadfast motion, at 6, ¶ 14; FMMG response, at 5, footnote 5.

[4] *Universal Life Ins. Co. v. Giles*, 950 S.W.2d 48, 60 (Tex. 1997), the only Texas case cited by Steadfast, merely holds that "[i]n a third party case, both the insurer and the insured have a common interest in challenging a third-party's claim." But even that case recognizes that the common interests of an insurer and insured are not always aligned: "But in a first-party case, an insurer's interest in challenging the claim directly conflicts with the insured's interest in making the claim." *Giles*, 950 S.W. 2d at 60.

[5] Steadfast motion, at 8, ¶ 21.

3

that case, which bears some similarity but is not exactly like this one,[6] the District of Columbia district court succinctly summarized the issue:

> The crux of this dispute is whether the "common interest" doctrine trumps plaintiffs' claims of privilege where there is admittedly a common interest between the insurers and insureds in minimizing exposure in the underlying dioxin-related claims, but where there is also sharp dispute between insurers and insureds regarding insurance coverage.

The court then ruled in favor of disclosing certain documents:

> There is no common interest between plaintiffs and defendants regarding communications made in anticipation of a dispute between plaintiffs and defendants. It is essential, however, to recognize that defendants are obligated at this time to defend plaintiffs in the underlying dioxin-related cases. To do this, access to documents prepared in anticipation of those claims are essential, and while those documents may be privileged from party opponents in the underlying claims, they cannot be privileged from carriers obligated to shoulder the burden of defending against those claims. There is no showing by plaintiffs that plaintiffs generated the documents expecting that they would be concealed from their insurance carriers. The documents were generated in anticipation of minimizing something of common interest to both parties in this suit: exposure to liability from tort claimants. In short, plaintiffs had no reasonable expectations of confidentiality with regard to those documents.

*Id.* at 1365-66 (citations omitted).

In *Eureka Invest. Corp.. v. Chicago Title Ins. Co.*, 743 F.2d 932 (D.C. Cir. 1984), the owner of an apartment building (Eureka) sued its title insurer (CTI) to recover for delays in converting the building into condominiums caused by tenant suits against Eureka. The same lawyer, Daniel Singer, defended CTI and Eureka in the tenant suits. In the subsequent legal

---

[6] For one thing, the insurer was apparently actively engaged in ongoing defense of that underlying litigation at the time it sought the privileged documents relating to that litigation from its insured.

action Eureka brought against CTI, CTI sought discovery of all of Eureka's communications with Singer. The district court ordered production of Eureka's communications with Singer regarding the subject matter of the tenant suits, but upheld the attorney-client privilege as to documents prepared with a view towards litigation with CTI. The court of appeals affirmed, finding that although Singer represented CTI and Eureka on a matter of common interest in the tenant cases, he represented Eureka individually on the matter of possible legal action against CTI. Because the communications at issue were made after the interests of CTI and Eureka diverged and in the course of a distinct attorney-client relationship between Eureka and Singer, Eureka had an expectation of confidentiality in its communications with Singer. The court found no policy favoring disclosure to CTI in this situation.[7]

Steadfast also cites *Southeastern Penn. Transp. Auth. v. Transit Cas. Co.*, 55 F.R.D. 553, 556 (E.D. Pa. 1972), in which the court stated:

> It thus seems clear that, in relation to counsel retained to defend the [third-party] claim, the insurance company and the policy-holder are in privity. Counsel represents both, and, *at least in the situation where the policy-holder does not have separate representation,* there can be no privilege on the part of the company to require the lawyer to withhold information from his other client, the policy-holder. In short, I am satisfied that, with respect to all matters from the beginning of the litigation until the termination of the attorney-client relationship between the assured and the attorney, there can be no attorney-client privilege which would prevent disclosure to the policy-holder.

(emphasis added).

---

[7] The court expressed no view on the ethics of the attorney's separate representation of Eureka, stating "counsel's failure to avoid a conflict of interest should not deprive the client of the privilege." *Eureka*, 743 F.2d at 938.

The above cases make clear that FMMG's communications, if any, with counsel regarding *coverage* issues are privileged from production to Steadfast in this case. The above cases also make clear that the keystone for determining whether FMMG's privileged communications regarding the merits of the *McDermot* lawsuit must be disclosed in this litigation is whether the insured, FMMG, had a reasonable expectation of confidentiality in the communications at the time they were made. An expectation of confidentiality is reasonable where the insured was represented by separate counsel in the underlying lawsuit. There can be no reasonable expectation of confidentiality, and the communications will not be protected from disclosure, where the insured and insurer shared representation in the underlying lawsuit. This analysis is consistent with Texas Rule of Evidence 503(d).

FMMG has submitted evidence that its counsel represented only FMMG in the *McDermot* lawsuit. In fact, FMMG's counsel advised FMMG's insurers in February 2005 that due to the conflict of interest raised by the coverage dispute he would report only factual developments in the litigation and would not share his own or FMMG's legal opinions regarding the claims brought by the *McDermot* plaintiffs.[8] Steadfast offers no counter-evidence on this issue. As far as the court can discern, the first objection Steadfast raised to counsel's unwillingness to be more forthcoming came in April 2007, at the time settlement

---

[8] Affidavit of William Daniel Wellons, Ex. 2 to FMMG's response, ¶¶ 3-5 and attached February 21, 2005 letter from Wellons to insurer representatives. Steadfast has filed an objection to Wellon's affidavit on the grounds that his assertion in paragraph 6 of what he was told by a Steadfast (referred to in the affidavit as Zurich) representative is hearsay. The objection is overruled. In any event, the court has not found it necessary to rely on paragraph 6 making its ruling.

of the underlying lawsuit was being negotiated and shortly before this case was filed.[9] The evidence establishes that FMMG at all times expected its attorney-client communications and work product in the *McDermot* lawsuit to remain confidential. Therefore, the "common interest" theory, assuming it is recognized under Texas law,[10] does not require FMMG to disclose its privileged documents to Steadfast.

*__Cooperation clause__*. The insurance policy Steadfast issued to FMMG requires FMMG to:

> Cooperate with [Steadfast] in the investigation or settlement of the claim or defense against the "suit";[11]

Steadfast argues that this provision constitutes a waiver of FMMG's attorney client and work product privileges related to the *McDermot* lawsuit. Again, Steadfast cites no Texas authority.[12] As Steadfast points out in its reply to FMMG's response, a waiver is "the

---

[9] FMMG's response, Ex. 4, April 27, 2007 letter from Carol Keough to Dan Wellons.

[10] The Fifth Circuit has recognized a federal "common legal interest" privilege, commonly called the joint-defense privilege, for: (1) communications between co-defendants in actual litigation and their counsel, (2) communications between potential co-defendants and their counsel. *In re Santa Fe Int'l Corp.*, 272 F.3d 705, 710 (5th Cir. 2001). This privilege has been held to protect communications between an insurer and an insured. *See Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 219 F.R.D. 396, 401 (E.D. Tex. 2003). However, the court has not found a case in the Fifth Circuit applying a "common legal interest" theory to defeat a claim of attorney-client privilege where an insured had independent legal counsel in underlying litigation.

[11] Steadfast motion, Ex. B, § VI, ¶ 2(c)(3).

[12] Steadfast relies primarily on *Waste Management Inc. v. Int'l Surplus Lines Ins. Co.*, 579 N.E.2d 322 (Ill. 1991), holding that a similar cooperation clause negated an insured's attorney-client and work product privileges for documents related to an underlying hazardous waste litigation. The court agrees with FMMG and the district court of Minnesota that the

intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *In re General Electric Capital Corp.*, 203 S.W.3d 314, 316 (Tex. 2006). If the parties had intended the cooperation clause of the insurance policy to constitute a waiver of privileges in any third-party lawsuit, they could and should have said so in the policy. The court rejects Steadfast's contention that a cooperation clause in an insurance contract operates as a contractual waiver of an insured attorney-client and work product privileges absent evidence of the parties' intention to do so.

***Offensive use***. Finally, Steadfast contends that FMMG has waived its privileges by affirmatively seeking relief in this case. The following factors guide the court in determining whether an offensive use waiver has occurred: (1) the party asserting the privilege is seeking affirmative relief; (2) the privileged information sought in all probability would be outcome determinative of the cause of action asserted; and (3) the party seeking disclosure has no other means of obtaining the evidence. *Republic Ins. Co. v. Davis*, 856 S.W.2d 158, 163 (Tex. 1993); *Transamerican Nat. Gas. Corp. v. Flores*, 870 S.W.2d 10, 11-12 (Tex. 1994). Waiver should not be found lightly; if any one factor is missing, the court must uphold the privilege. *Davis*, 856 S.W.2d at 163. There is no question that FMMG is seeking affirmative relief. The other two factors do not support an offensive waiver.

The offensive use doctrine was established by the Texas Supreme Court in *Ginsberg v. Fifth Court of Appeals*, 686 S.W.2d 105 (Tex. 1985) (addressing the psychotherapist-

---

reasoning of *Waste Management* is "fundamentally unsound." *Bituminous Cas. Corp. v. Tonka Corp.*, 140 F.R.D. 381, 386 (D. Minn. 1992).

patient privilege). The medical records at issue in that action disputing title to a building established the defendant's statute of limitations defense. The plaintiff claimed she had no knowledge of a change of building ownership until 1981, but her medical records revealed that she told her psychiatrist in 1972 that the building had been sold.

Using *Ginsberg* as a measure of what it means for documents to be outcome determinative,[13] the court determines that Steadfast has failed to show that any documents being withheld by FMMG are "in all probability outcome determinative." Steadfast states that "documents produced in discovery so far indicate that [FMMG] was working against Steadfast to make Steadfast pay 100% of the defense costs for the *McDermot* case, even though both Steadfast and Lexington Insurance Company told [FMMG] that the policies and Texas law required Lexington to share in the defense."[14] If true, it does not necessarily follow that FMMG is withholding privileged documents that are outcome determinative on the same point.[15] The court declines to find an offensive use waiver based on such conclusory allegations.

---

[13] In *Davis*, the Texas Supreme Court held that Republic's declaratory judgment action did not seek the kind of affirmative relief that would result in an offensive use waiver, therefore it did not address the outcome determinative factor. In *Flores*, the court found that the documents "may be relevant, but mere relevance is not sufficient to waive TransAmerican's privilege," but the court did not describe what information the documents contained. 870 S.W.2d at 12.

[14] Steadfast reply, at 1.

[15] Steadfast's statement quoted above indicates a second flaw in its argument – if evidence already discovered supports Steadfast's position, how can it also be true that FMMG's privileged documents are the only source of such evidence?

**<u>Conclusion</u>**

For the reasons explained above, Steadfast's motion to compel (Dkt. 81, supplemented by Dkt. 88) is denied.

Signed at Houston, Texas on December 19, 2008.

*Stephen Wm Smith*
Stephen Wm Smith
United States Magistrate Judge